UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LUIS F. GOMEZ,

              Petitioner,

                                      Case No. 23-cv-339-pp

   v.

UNITED STATES OF AMERICA,

              Respondent.

---

**ORDER DENYING PETITIONER'S §2255 MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE (DKT. 1), DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY AND DISMISSING CASE**

---

On March 14, 2023, the petitioner, who is representing himself, filed a motion under 28 U.S.C. §2255, asking the court to vacate, set aside or correct the sentence imposed in United States v. Gomez, Case No. 17-cr-113 (E.D. Wis.) on the grounds that he received ineffective assistance of counsel and an improper sentencing enhancement. Dkt. No. 1. The government opposes the motion, arguing that counsel's performance was not ineffective and that challenges to the sentencing guidelines are not cognizable under §2255. Dkt. No. 4. The court will deny the petitioner's motion, decline to issue a certificate of appealability and dismiss the motion (and the case).

I.    **Background**

    A.    <u>Underlying Case</u>

On June 20, 2017, the grand jury returned an indictment against the petitioner and his co-defendants in Case No. 17-cr-113. Dkt. No. 1. Count One

1

charged the petitioner with knowingly and intentionally conspiring to distribute one kilogram or more of heroin, five kilograms or more of cocaine and fifty grams or more of methamphetamine in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(a) and 846 and with aiding and abetting the conspiracy in violation of 18 U.S.C. §2. Id. at 2. On November 12, 2019, after a six-day trial, a jury found the petitioner and his co-defendant, Pablo Hidalgo-Sanchez, guilty of Count One of the indictment. Dkt. No. 629. The court sentenced the petitioner to 168 months (fourteen years) in prison followed by five years of supervised release. Dkt. No. 891. The court entered judgment on January 26, 2021. Dkt. No. 892.

On January 27, 2021, the petitioner filed a notice of appeal. Dkt. No. 894. On appeal, the petitioner argued that the government's impermissible use of bolstering testimony warranted a new trial. Dkt. No. 1002 at 28. On March 31, 2022, the Seventh Circuit affirmed the petitioner's conviction, finding that although the government had impermissibly introduced bolstering testimony at trial, the presentation of the testimony did not constitute plain error. Id. at 34.

B.    Motion to Vacate, Set Aside or Correct Sentence (Dkt. No. 1)

On March 14, 2023, the petitioner filed the instant §2255 motion arguing that he was deprived of his right to effective assistance of counsel in violation the Fifth, Sixth, Eighth and Fourteenth Amendments. Dkt. No. 1 at 2–3. The petitioner says that his counsel was ineffective by: giving him bad advice that caused him to reject a plea offer and go to trial, thereby losing the opportunity for a more favorable sentence; failing to file timely objections to the presentence investigation report; failing to perfect the record on appeal; and failing to

2

present sufficient and credible evidence during trial and at sentencing to show that an aggravating role sentencing enhancement under USSG §3B1.1(a) was improperly calculated. Id. at 4. The petitioner also requests an evidentiary hearing. Id. at 8–9.

The petitioner first argues that his counsel failed to advise him that "it was in his best interest to plea[d] guilty." Dkt. No. 1 at 4. The petitioner contends that he was "not informed of the very high probability that he would lose the trial" and that counsel led him to believe that he would face the same amount of prison time as was offered in the plea agreement should he be found guilty at trial. Id. at 4–5. Specifically, the petitioner states that counsel advised him to reject the government's plea deal (to a charge that carried a ten-year mandatory minimum) because the district court would sentence the petitioner to only ten years if he lost at trial. Id. at 5. The petitioner states that counsel's performance was deficient because the lawyer was "unfamiliar with the sentencing guidelines and substantially misstated [petitioner's] exposure." Id. at 5–6.

The petitioner next argues that the court improperly applied a four-level sentencing enhancement under USSG §3B1.1(a) and that his counsel failed to object to the enhancement. Id. at 6–7. The petitioner argues that the sentencing enhancement applies to a defendant who was an "organizer or leader of a criminal activity that involved 5 or more participants, or was otherwise extensive." Id. He asserts that the factual basis for this enhancement was not established at trial or at the sentencing hearing. Id. at 7. The petitioner

3

asks the court to correct his sentence to reflect a guideline range without the enhancement. Id. at 8. According to the petitioner, his sentence should be reduced to 120 months to match the low end of the revised guideline range. Id. The petitioner argues that his sentence was increased based on counsel's deficient performance and failure to object to the enhancement. Id.

Finally, the petitioner asks for an evidentiary hearing, arguing that such a hearing is the "default" unless his claim is manifestly invalid from the face of the record. Id. at 8–9.

The government responded to the petition, arguing that the petitioner received effective assistance of counsel. Dkt. No. 4 at 4. The government asserts that the plea offer the petitioner mentioned identified a mandatory minimum ten-year sentence, but calculated the sentencing guidelines using a base offense level of 34 and an additional 4-level enhancement under §3B1.1(a) for being a leader or organizer in a criminal activity. Id. (citing Dkt. No. 4-1). The government maintains that the petitioner's counsel properly advised him that the guideline range would be the same whether he plead guilty or was found guilty at trial. Id. According to the government, the only benefit the petitioner lost from declining the plea offer was the 3-level reduction for acceptance of responsibility under §§3E1.1(a) and (b). Id. The government recounts that the court sentenced the petitioner to 168 months of incarceration, which the government argues corresponds to the low end of the guideline range calculated in the plea offer. Id. The government argues that even if counsel's performance was deficient, the petitioner cannot establish

prejudice because the sentence he received would have been presumptively reasonable under the plea agreement. Id. at 5.

Next, the government argues that the petitioner cannot challenge the sentencing enhancement on a §2255 motion. Id. The government maintains that a misapplication of the sentencing guidelines does not raise a constitutional issue, deprive the court of jurisdiction or constitute an assertion that the judge exceeded the statutory maximum. Id. (quoting Scott v. United States, 997 F2d 340, 341 (7th Cir. 1993); Buggs v. United States, 153 F.3d 439, 443 (7th Cir. 1998)). It argues that because the sentencing guidelines are "advisory," an erroneous calculation does not provide a basis for relief under §2255. Id. at 6. According to the government, the sentencing judge must independently consider whether a guideline sentence is consistent with the 18 U.S.C. §3553(a) factors. Id.

The government also opposes the petitioner's request for an evidentiary hearing. Id. The government argues that the petitioner was obligated to submit an affidavit detailing the facts that he would establish at a hearing, and he did not do so. Id.

On receiving the government's response, the court ordered that by May 20, 2024, the petitioner must file a brief in support of his petition. Dkt. No. 6. On April 22, 2024, the court received from the petitioner a motion asking for a copy of the government's response, dkt. no. 7, as well as a brief in support of his petition, dkt. no. 8. The content of the brief is substantially the same as the petitioner's original §2255 motion. Compare Dkt. No. 1 with Dkt. No. 8. On

April 23, 2024, the clerk's office re-sent the petitioner the government's response. Dkt. No. 7. On April 24, 2025, the court issued an order telling the petitioner that he could file a new brief in support of his motion in order to address the government's response and giving him a deadline of June 14, 2024 if he chose to file such a brief. Dkt. No. 9. The court told the petitioner that if he did not file a new brief, the court would rely on the brief the petitioner filed on April 22, 2024 (Dkt. No. 8). Id. The petitioner did not file a new brief. Dkt. No. 10. On October 25, 2024—in compliance with the court's July 16, 2024 order, dkt. no. 10—the government filed an opposition brief to the petitioner's motion. Dkt. No. 11.

The content of the government's opposition brief is substantially the same as its response to the original motion. On October 31, 2024, the court issued an order giving the petitioner a deadline of December 6, 2024 by which to file a reply brief in support of his motion. Dkt. No. 13. The court did not receive the petitioner's reply brief until December 9, 2024—three days late. Dkt. No. 14. The court will not consider the petitioner's reply brief in deciding this motion because it was not timely filed.[1]

## II.  Analysis

A petitioner seeking relief under §2255 must allege either that the sentence violated the Constitution or laws of the United States, that the court was without jurisdiction, that the sentence exceeded the maximum authorized

---

[1] Even if the court were to consider the reply, it restates the petitioner's arguments from his opening brief and does not respond to the arguments made by the government in its opposition brief.

by law or that the sentence is otherwise subject to collateral attack. 28 U.S.C. §2255(a). "Relief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" United States v. Coleman, 763 F.3d 706, 708 (7th Cir. 2014) (quoting Blake v. United States, 723 F.3d 870, 878–79 (7th Cir. 2013)).

> It is well-established that a district court need not grant an evidentiary hearing in all § 2255 cases. Such a hearing is not required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see also Menzer v. United States*, 200 F.3d 1000, 1006 (7th Cir. 2000). In addition, a hearing is not necessary if the petitioner makes allegations that are "vague, conclusory, or palpably incredible," rather than "detailed and specific." *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006). A district court, however, must grant an evidentiary hearing if the petitioner "alleges fact that, if proven, would entitle him to relief." *Id.* (citation and internal quotation marks omitted); *Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994).

Martin v. U.S., 789 F.3d 703, 706 (7th Cir. 2015).

A.    Ineffective Assistance of Counsel

    1.    *Governing Law*

The petitioner has raised his ineffective assistance of counsel claim for the first time in the §2255 motion. Normally, the doctrine of procedural default would bar these claims because the petitioner did not raise them before this court or the Seventh Circuit. But the Seventh Circuit generally allows a petitioner to raise an ineffective assistance of counsel claim for the first time in a §2255 motion "regardless of whether the petitioner could have raised the claim on direct appeal." Delatorre v. United States, 847 F.3d at 845 (quoting

7

<u>Gaylord v. United States</u>, 829 F.3d 500, 506 (7th Cir. 2016)). Even though he did not raise this issue on appeal, the petitioner is not barred from raising his ineffective assistance of counsel claims for the first time in a §2255 motion.

> The Sixth Amendment right to effective assistance of counsel extends to the plea bargaining process. *Lafler v. Cooper*, [566 U.S. 156, 162] (2012). To prevail on an ineffective assistance of counsel claim, [the petitioner] must satisfy the familiar two-part test articulated in *Strickland v. Washington*, 455 U.S. 668 . . . (1984). First, [the petitioner] "must show that counsel's representation fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688 . . . , and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694 . . . .

<u>Martin</u>, 789 F.3d at 706.

"The performance prong of *Strickland* requires a [petitioner] to show 'that counsel's representation fell below an objective standard of reasonableness.'" <u>Lafler</u>, 566 U.S. at 163 (quoting <u>Hill v. Lockhart</u>, 474 U.S. 52, 57 (1985)). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." <u>Harrington v. Richter</u>, 562 U.S. 86, 105 (2011) (quoting <u>Strickland</u>, 466 U.S. at 690). "To establish *Strickland* prejudice, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Lafler</u>, 566 U.S. at 163 (quoting <u>Strickland</u>, 466 U.S. at 694).

2.    *The Petitioner's Arguments*

The petitioner states that his counsel's performance was deficient for four reasons: counsel allegedly gave the petitioner advice that caused him to

8

reject a plea offer and go to trial; counsel failed to file timely objections to the presentence investigation report; counsel allegedly did not perfect the record on appeal; and counsel allegedly failed to present sufficient and credible evidence during trial and at sentencing to show that the sentencing enhancement under USSG §3B1.1(a) did not apply. Dkt. No. 8 at 4. But the petitioner's brief provides argument only as to the first issue. See id. at 4–6. "[P]erfunctory and underdeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." Crespo v. Colvin, 824 F.3d 667, 674 (7th Cir. 2016) (quoting United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir. 1991)).

### 3. *Advice Regarding Pleading Guilty*

The Seventh Circuit has identified criteria for courts to consider in evaluating whether counsel provided objectively reasonable representation in giving a client advice whether to take a plea agreement or go to trial. "A reasonably competent attorney will attempt to learn all of the facts of the case, make an estimate of the likely sentence, and communicate the result of that analysis before allowing the client to plead guilty." Julian v. Bartley, 495 F.3d 487, 495 (7th Cir. 2007) (citing Bethel v. United States, 458 F.3d 711, 717 (2006); Moore v. Bryant, 348 F.3d 238, 241 (7th Cir. 2003); United States v. Barnes, 83 F.3d 934, 939 (7th Cir. 1996)). "The attorney need not be 100% correct in her prediction of the consequences of pleading guilty and of going to trial, as a mistake, in and of itself is not proof of deficient performance." Id. (citing Moore, 348 F.3d at 241; Barnes, 83 F.3d at 939-40). But in some cases

9

counsel's prediction may be such a gross mischaracterization that it provides a "strong indication of constitutionally deficient performance." United States v. Martinez, 169 F.3d 1049, 1053 (7th Cir.1999). "A court may factor the magnitude of the error into its assessment of whether the legal advice was that of a reasonably competent attorney." Bartley, 495 F.3d at 495 (citing McMann v. Richardson, 397 U.S. 759, 769-71 (1970)).

The petitioner frames his first ineffective assistance argument this way: "Counsels ineffective advice led to an offer rejection, and cause me to stand trial where I suffered prejudice because I lost the opportunity to take the more favorable sentence offered in the plea." Dkt. No. 8 at 4. He goes on to say:

> In the case of bar [the petitioner] was not informed that he should accept the 10 year mandatory minimum plea offer, he was not informed of the very high probability that he would lose the trial because of the over whelming evidence the government had disclosed in its discovery, Counsel led [the petitioner] to believe that he would face the same amount of jail time if he proceeded to trial.

> If [the petitioner] had been presented with the facts and given the chance to make an informed choice, he would have taken the 10 years offered.

> . . . .

> Petitioner's Counsel of record advised Petitioner to reject the Government's plea offer of 10 years to serve, telling petitioner the district court would impose the 10 years if he proceeded to trial. Counsel of Record Performance fell below an objective level of reasonableness.

Id. at 4-5. The petitioner claims that he can show that his counsel's performance was deficient "because, among other things, Counsel of Record was unfamiliar with the sentencing guidelines and substantially misstated [the petitioner's] exposure if he were to be found guilty." Id. at 5-6. Finally, the

10

petitioner asserts that "Counsel of Record rendered ineffective assistance by allowing [the petitioner] to proceed to trial, knowing that he could not prevail with any of the evidence before the jury and a competent attorney never would of place his client in such a losing position." Id. at 6. The petitioner's arguments fail for several reasons.

a.    Record evidence

First, the petitioner's bare and unsupported allegations that he wasn't informed of the volume of evidence against him and that he was advised not to plead guilty are not supported by—and specifically are contradicted by—the facts and the record. The petitioner was arrested on September 19, 2017, Case No. 17-cr-113 at dkt. no. 119; his counsel appeared on September 23, 2017, just four days later, id. at dkt. no. 88. Two days later, at the detention hearing, the prosecutor detailed the serious nature of the charges; he emphasized that the petitioner was facing a mandatory minimum of ten years and a maximum of life, that the petitioner was the leader of a drug trafficking organization, that he had communication with cartel members in Mexico, that there were wire taps and video surveillance, that the drug trafficking was large-scale and involved kilogram quantities of drugs and that the case against the petitioner was very strong. Id., Dkt. No. 100 at 1. Both the petitioner and his lawyer were present for that hearing. Id. In October 2018—when counsel had been representing the petitioner for a year—defense counsel filed a letter with the government, asking for a list of the "greatest hits" phone calls involving the petitioner so that counsel could arrange for funding of translations. Id. at Dkt.

11

No. 338. In December 2018, counsel filed a motion asking the court to release the petitioner on bond. Id. at Dkt. No. 347. In February 2019, counsel wrote to the judge then assigned to the case (Judge Stadtmueller), asking for an adjournment of the trial because counsel still had not received from the government a list of the calls it planned to use at trial. Id. at Dkt. No. 358.

On March 5, 2019, defense counsel filed a motion asking the court to dismiss the indictment as to the petitioner because compelling him to go to trial on the then-scheduled date of May 20, 2019 would deny the petitioner his Sixth Amendment right to effective assistance of counsel; in the alternative, counsel asked the court to make Criminal Justice Act funding available for translation of all intercepted calls so that counsel could review English versions of those calls. Id. at Dkt. No. 368.

On May 7, 2019, the petitioner's lawyer filed a motion to withdraw, saying that the petitioner had instructed him to do so. Id. at Dkt. No. 464. At the May 14, 2019 hearing on that motion (at which the petitioner was present), defense counsel told the magistrate judge that he and the government had discussed a possible resolution and that that possible resolution had been communicated to the petitioner; counsel told the court that he'd talked with the petitioner about the pros and cons of resolving the case before trial, but that he'd not presented the petitioner with a proposed written plea agreement until April. Id., Dkt. No. 487 at 1. After the government left the hearing, the petitioner expressed concerns about how his lawyer planned to fight the charges, and doubts about whether his lawyer was trying to resolve the case

12

short of trial; he stated that he did not believe his lawyer was doing everything the lawyer could do. Id., Dkt. No. 487-1 at 2. The court found, however, that throughout the case, defense counsel had "argued aggressively" for the petitioner. Id. In the end, the petitioner and counsel decided to continue to work together, although the court advised the petitioner that it was critically important that he not keep anything from his lawyer. Id. at p. 3.

Defense counsel would go on to file a motion asking Judge Stadtmueller to recuse himself in the wake of a report from the U.S. Marshals Service that the petitioner had issued a threat against the judge in his case. Id. at Dkt. No. 488. In that motion, he noted that the court had not ruled on his motion to dismiss the indictment or, in the alternative, to provide funding to translate calls. Id. The motion was successful in part; Judge Stadtmueller recused himself, id. at dkt. no. 493, and the case was assigned to this court on May 15, 2019. A few months later (after this court had adjourned the trial and asked the parties to work together on obtaining translations of the relevant calls), defense counsel filed another motion to modify bail. Id. at Dkt. No. 490. At the October 7, 2019 hearing on that motion, the prosecutor reiterated that the petitioner was one of two leading defendants in the case, that there was extensive information regarding his conduct, that there were months of wiretap interceptions from the petitioner's phone to cartel members in Mexico, that large amounts of cocaine, methamphetamine and money had been seized and that the petitioner faced a mandatory minimum sentence of ten years. Id., Dkt. No. 598 at 2.

13

The minutes of the October 18, 2019 final pretrial conference—attended both by the petitioner and his lawyer—reflect the following:

> During the discussion of the court's trial practices, counsel for [the petitioner] told the court that his client had made a request of him. His client had asked him to demand that the government produce evidence relating to the allegation that [the petitioner] had made a threat against one of the predecessor judges on the case, so that counsel could present that evidence to the jury at trial and the [petitioner] then could rebut it. Counsel stated that he'd told the [petitioner] that he would not do this, because the court likely would not allow the government to present evidence of the alleged threat at trial and because if defense counsel presented it, it could be harmful to the [petitioner]. Despite counsel having told [the petitioner] that he would not do what the [petitioner] had asked, counsel reported that the [petitioner] had persisted and was angry with counsel for not doing as he asked. The court confirmed with the prosecutor that he would not present any evidence at trial about the alleged threat. The prosecutor explained that the allegations were still under investigation, and that he could not provide defense counsel with any details for that reason. He noted, however, that the allegations were just that—allegations. He was not certain at this point that there *had* been a threat, and that he had notified the defendants (after having been notified by the marshal, who'd notified the predecessor judges) only because he was obligated to do so. The court told the [petitioner] that it would not allow the government to mention the alleged threats or present any evidence about them. The [petitioner] continued to speak with his lawyer, who reported that the [petitioner] believed the government had engineered the allegations in order to delay his trial by forcing the prior district court judge off the case. The court explained that it was this court— Judge Pepper—who had decided to delay the trial, in order to give the interpreter time to complete the work on the recorded conversations. The court also advised the [petitioner] that it would not allow him, or his lawyer, to present evidence about the alleged threat, because it was not relevant to the drug charges that were the subject of the trial. The [petitioner] persisted, through counsel and despite counsel's attempts to explain, in asserting that he wanted to show that he made no threats. Finally, the court offered that after the trial was over, it would be willing to hear the [petitioner's] explanations about the fact that he had not threatened anyone. The [petitioner] indicated that he would accept the court's offer.

14

Id., Dkt. No. 609 at 2-3. At no point during this hearing did the petitioner tell the court that his lawyer had not fully explained to him the pros and cons of pleading versus going to trial, or that his lawyer had not advised him of all the facts.

Although the trial involved only two defendants—the petitioner and defendant Pablo Hidalgo Sanchez—it lasted six days, from November 4 through November 12, 2019. Id. at Dkt. No. 632. On the first day of trial, defense counsel again advised the court that the petitioner wanted him to present evidence of the alleged threats so that the petitioner could rebut that evidence; the court again advised the petitioner that it would not allow that. Id. at 2. On the fourth day of trial, the court advised the petitioner and his lawyer that it had received a letter from the petitioner; in discussing that letter (which the petitioner claimed he had not seen), the petitioner advised the court that he wanted to continue with the trial, and with his counsel. Id. at 4. After the close of evidence, defense counsel moved for a mistrial, arguing that the government had misstated facts to the jury. Id. at 7.

The letter to which the petitioner referred appears in Case No. 17-cr-113 at Dkt. No. 656; the court received it on February 3, 2020 and it was dated January 16, 2020. In it, the petitioner insisted that his lawyer and the prosecutor conspired to remove Judge Stadtmueller from his case. More relevant to this order, however, the petitioner's statements in that letter directly contradict the arguments he makes in his brief in support of his §2255 motion.

In the letter, the petitioner complains about how much his lawyer charged him and other things, but also says:

> The course of the courts continued, and the lawyer presented me with a plea full of multiple errors. He wanted me to sign it and he said he would later fix the mistakes, yet I said no. After the courts, the lawyer told me that prosecutor . . . had told me to sign and take my sister's charges. I told him that this was not a deal since my sister is innocent. He replied that he could make my sister pay for many years and that I would stop seeing my daughter for many years because they can make me pay for a lot if I lose in court. My lawyer told me "If they find you guilty, they will give you 235 to 293 months, that would be the minimum". I was too scared, but something told me not to sign the plea and answer no. This was the same day when we had the court and when I could call my family. They told me that they had already dropped my sister's charges. When I heard this, I sighed thinking I almost signed the plea.
> A few days later, they told me that if I signed, they would take away my brother-in-law's charges, my wife's brother and I said no. Then I reminded my lawyer of the words of the honorable Stad Muller, as he said that if they were scaring me to sign a plea telling me that it would give me many years or any other way there would be consequences as I would say everything.

Id., Dkt. No. 656-1 at 3. Later in the letter, the petitioner asserted that the allegations that he threatened a judge were manufactured "to prevent [him] from saying how they were scaring [him] to sign the plea." Id. at 4.

The petitioner attached to this letter a letter from his lawyer, correctly explaining the impact of the government's view that the petitioner had an aggravating role in the conspiracy and the government's claim that he possessed a firearm (or induced someone else to) on the petitioner's ability to get the "safety valve" reduction under the guidelines. Id. at 6. And he attached a letter from him to his lawyer in which he stated that he wanted to have all his paperwork and "to fight for [his] freedom." Id. at 10.

16

On September 17, 2020, counsel filed another motion to withdraw, advising the court that the petitioner had filed a complaint against him with the Wisconsin Office of Lawyer Regulation. Id. at Dkt. No. 827. The court granted that motion, id. at Dkt. No. 830, and successor counsel appeared on September 30, 2020, id. at Dkt. No. 834.

The petitioner's attorney represented him for four years, filed motions on his behalf and appeared with him at hearings where the government detailed the substantial evidence against him. While the petitioner claims in his 2255 motion that his lawyer advised him to reject the government's plea offer and go to trial, he claimed the opposite in his January 2020 letter to the court, asserting that his lawyer had tried to "scare" him into pleading by telling him that he would receive a significant amount of time in prison if he went to trial. It is inconceivable that the petitioner could be represented for years by the same lawyer, sit through at least two hearings where the government detailed the significant evidence against him and have no sense of the serious nature of the charges and the amount of evidence. Given the detail that the petitioner included in his January 2020 letter to the court about what his lawyer had told him about the guidelines he faced, it begs belief that his lawyer told him to just take the plea because he'd receive the same sentence regardless.

b.    The actual plea offer

The next deficiency in the petitioner's argument is that it assumes that the government offered to enter into a plea agreement in which the government would recommend that the court impose only the mandatory minimum

17

sentence of ten years (or 120 months). The government attached to its response brief the proposed plea agreement that it had provided the petitioner's lawyer. Dkt. No. 4-1 at 2-20. That plea agreement did *not* state that the government would recommend the mandatory minimum ten-year sentence.

The proposed plea agreement required the petitioner to plead guilty to the conspiracy charge—the same conspiracy charge of which the jury found him guilty. Dkt. No. 4-1 at ¶4. It *advised* the petitioner that that offense carried a "mandatory minimum of 10 years of imprisonment." Id. at ¶6. But it also advised him that the charged carried a *maximum* penalty of life in prison. Id. The plea agreement stated that both parties agreed that the conspiracy involved five or more kilograms of cocaine—the amount that triggered the ten-year mandatory minimum. Id. at ¶8. It stated that the parties both acknowledged and understood that the government was going to recommend to the sentencing judge that the relevant conduct attributable to the petitioner was

> at least fifty kilograms but less than one hundred fifty kilograms of a mixture and substance containing cocaine, a Schedule II controlled substance, at least ten kilograms but less than thirty kilograms of a mixture and substance containing heroin, a Schedule I controlled substance, and at least five kilograms but less than fifteen kilograms of a mixture and substance containing methamphetamine, a Schedule I controlled substance.

Id. at ¶16.

Based on those amounts, the agreement stated that the parties agreed that the base offense level was 34 under U.S.S.G. §2D1.1(c)(3). Id. at ¶17.The agreement stated that the parties acknowledged that the government would

recommend to the sentencing judge that the judge apply a 4-level increase under USSG §3B1.1(a) "for an aggravating role in the offense, as the [petitioner] was an organizer, leader, manager, or supervisor." Id. at ¶18. It stated, however, that the parties acknowledged and agreed "that the [petitioner] will not join in this recommendation." Id. The agreement stated that the government would ask the sentencing judge to decrease the petitioner's offense level by 2 levels under §3E1.1(a) for accepting responsibility, "but only if the [petitioner] exhibits conduct consistent with the acceptance of responsibility." Id. at ¶19. It also stated that if the court determined at sentencing that that the petitioner should receive that 2-level reduction, "the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the [petitioner] timely notified authorities of his intention to enter a plea of guilty." Id. The agreement stated that the government agreed to recommend that the sentencing court impose a sentence within the applicable guideline range (whatever the court determined that range to be); it left the petitioner free to make whatever sentencing argument he thought was appropriate. Id. at ¶23.

Critically, the plea agreement stated (as almost all plea agreements in the Eastern District of Wisconsin do):

> The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraphs 6 and 7 above. The parties further

19

understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

Id. at ¶24.

The parties do not say when the government made this offer to the petitioner, but it likely would have been sometime in late March or early April 2019 (judging from an April 15, 2019 letter from the prosecutor to Judge Stadtmueller, listing those defendants who had signed plea agreements and representing that the government planned to continue negotiating with the defendants who had yet to resolve their cases, Case No. 17-cr-113 at Dkt. No. 407). It matters little for the purposes of the sentencing guidelines calculations; under any of the versions of the guidelines manual in effect while the case was pending, a base offense level of 34 plus a 4-level enhancement for an aggravated role (38), minus 2 for acceptance of responsibility and 1 for the timeliness of that acceptance, would have resulted in an adjusted offense level of 35. An adjusted offense level of 35 in criminal history category I would have resulted in an advisory guideline range of 168 to 210 months—fourteen years at the low end to seventeen and a half years at the high end (with the court having the discretion to impose a sentence below or above that range).

So—the petitioner's argument that his lawyer convinced him to go to trial rather than accepting a plea offer for a ten-year sentence must fail, because the government did not offer him a ten-year sentence. The government offered to recommend guidelines calculations that would have resulted in an advisory

20

guideline range of fourteen to seventeen and a half years, and to recommend that the court impose an unspecified sentence within that range.

###### c.    Defense counsel's guidelines calculations

After trial, the presentence report calculated the petitioner's offense level at 38 (a base offense level of 34, plus a 4-level enhancement for aggravated role); a level 38 in criminal history category I resulted in an advisory guideline range of 235 to 293 months—nineteen years and seven months on the low end to twenty-four years and five months on the high end. Id., Dkt. No. 869 at ¶169. That is exactly the guideline range the *petitioner* told the court in his January 2020 letter that his lawyer had "threatened" him with: "My lawyer told me 'If they find you guilty, they will give you 235 to 293 months, that would be the minimum'." Id., Dkt. No. 656-1 at 3. The record evidence shows that the petitioner's trial lawyer accurately predicted the guideline range the petitioner would face if he lost at trial; that while the government did not offer to recommend that the petitioner receive the ten-year mandatory minimum sentence, it did make an offer to recommend guidelines calculations that would have resulted in a lower guideline range; and that it was the *petitioner*—not his lawyer—who chose to go to trial rather than accept the government's plea offer.

###### d.    Predictability of sentences

Even if the petitioner's lawyer had told him that he would "face the same amount of jail time if he proceeded to trial," dkt. no. 8 at 4—a fact not supported by the record—the court could not conclude that that would have been such a "gross mischaracterization" of the plaintiff's exposure that it

reflected constitutionally deficient performance. The government offered to recommend certain guidelines calculations, and had the court adopted those calculations, the government would have recommended a sentence between fourteen and seventeen and a half years. But neither the government nor the petitioner could have guaranteed that the court would accept that recommendation. No matter what the government recommends in a plea agreement, the *court* imposes sentence, and the court has the discretion to give a different sentence than the one the government recommends. (In fact, that is what eventually happened at the petitioner's sentencing hearing—the government recommended a sentence within the guideline range of nineteen years and seven months to twenty-four years and five months, but the court imposed a sentence of fourteen years. Case No. 17-cr-113, Dkt. No. 891 at 3.)

Inaccurate predictions of sentencing results typically are not evidence of counsel's deficient performance because the guidelines are advisory and the final sentencing discretion rests with the sentencing judge. See, *e.g.*, Thomas v. United States, 606 F. App'x 840, 842-43 (7th Cir. 2015) ("[A]n inaccurate sentencing prediction alone is not deficient performance . . . .") (citations omitted); Barker v. United States, 7 F.3d 629, 633 (7th Cir. 1993) ("Misinformation from a defendant's attorney, such as an incorrect estimate of the offense severity rating, standing alone, does not constitute ineffective assistance of counsel."); Chichakly v. United States, 926 F.2d 624, 630 (7th Cir. 1991) ("An attorney obviously is not able nor is he expected to predict with precision the sentence a judge will impose in order to render effective

assistance of counsel unless he has control of the sentencing tribunal, and obviously there is no evidence of that here.").

   e. Counsel's familiarity with the guidelines

  The petitioner insists that his attorney was "unfamiliar with the sentencing guidelines." Dkt. No. 8 at 5-6. Again, the record directly contradicts this assertion. The petitioner's January 2020 letter to the court accurately recounts the sentencing range he faced after trial, and the petitioner told the court in that letter that his lawyer provided him with that guideline range. The petitioner provided the court with a letter to him from his lawyer that accurately and correctly discussed the impact of an aggravated role adjustment on a defendant's eligibility for the safety valve reduction. The petitioner's attorney has been practicing law for over four decades. He was doing federal criminal defense work when the undersigned was in private practice some twenty years ago. He has appeared before the undersigned on multiple occasions over the past ten years. Counsel is an experienced federal criminal defense attorney.

   f. Prejudice

  Even if the performance of petitioner's counsel had been deficient because he misunderstood or did not properly explain to the petitioner the proposed plea agreement, the petitioner's claim fails the second prong of Strickland because the petitioner cannot demonstrate that counsel's performance prejudiced him. Years ago, the Seventh Circuit observed that cases in which a petitioner alleges that his attorney's ineffective assistance

resulted in the *rejection* of a plea are rare. Paters v. U.S., 159 F.3d 1043, 1046 (7th Cir. 1998). The court explained that its decision in Toro v. Fairman, 940 F.2d 1065 (7th Cir. 1991) governed such a situation, laying out a two-part test. Id. "The court should consider whether [the petitioner] established (1) through objective evidence that (2) there is a reasonable probability that he would have accepted the alleged proposed plea agreement absent defense counsel's advice." Id. (citing Toro, 793 F.3d at 902 n.3). The petitioner's argument does not survive that test. His unsupported assertion that he would have taken a plea for a ten-year sentence absent his lawyer's advice is contradicted by the fact that the government did not offer to recommend ten years and the fact that his own filings with this court show that his attorney advised him of the guideline range he'd face if he went to trial but that the petitioner decided to reject the offer. Ultimately, the court sentenced the petitioner to 168 months of incarceration, which was below the applicable post-trial guideline range and at the low end of the guideline range contained in the plea offer.

The petitioner has not established that he received ineffective assistance of counsel regarding his decision to proceed to trial instead of accepting the plea offer.

### 4.    *Petitioner's Other Undeveloped Arguments*

The court has observed that the petitioner has asserted that his counsel was ineffective in three other ways. He has asserted that his lawyer "[f]ailed to file timey [he presumably means timely] objects to the Pre-Sentence where [the petitioner] was enhanced by 4-levels under Leader/Organizer." Dkt. No. 8 at 4.

24

He has asserted that his lawyer "[f]ailed to perfect the record on appeal." Id. And he has asserted that his attorney "[f]ailed to present sufficient, credible evidence during trial or at sentencing that established the existence of facts necessary to enable the court to conclude that the sentencing enhancement under USSG § 3B.1(a) were improperly calculated by the Pre-Sentence report under his Guideline range." Id. The petitioner waived these arguments because he did not develop them.

Even had he not waived these arguments, they would have failed. By January 2021, the court had allowed the petitioner's trial counsel to withdraw and had appointed him new counsel. See Case No. 17-cr-113 at Dkt. Nos. 830, 834. Contrary to the petitioner's assertion, new counsel *did* object to the Presentence Investigation Report's recommendation that the court apply the 4-level leader/manager/organizer enhancement under §3B1.1(a). Id., Dkt. No. 868 at 3 ("The [petitioner] objects to receiving any enhancements due to his role in the offense. The [petitioner] believes that all of the actors were independent contractors and therefore, objects to the four level enhancement."). See also id., Dkt. No. at 891, p. 1 (court minutes from sentencing hearing, in which the court observed that the petitioner had filed an objection to the proposed enhancement for his role in the offense).

The court has no idea what the petitioner means when he says that his attorney "failed to perfect the record on appeal." Without any argument or explanation, the court cannot analyze this assertion.

The petitioner's argument that his attorney failed to present sufficient, credible evidence at trial or at sentencing showing that the aggravated role enhancement was not appropriate implicates both the lawyer who represented him at trial and the lawyer who represented him at sentencing. As to the trial lawyer, the petitioner does not explain what evidence that lawyer could have presented to show that the petitioner was not a leader or organizer as defined by the guideline. This court presided over the trial. It listened to the evidence. It heard from people the petitioner had managed, and how he had managed them. If there was some evidence that would have contracted that proof, the petitioner should have described it in his petition. Because he has not done so, even if he had not waived the argument, he could not show prejudice.

His argument that his attorney did not produce evidence at sentencing implicates his sentencing attorney. As noted, the sentencing attorney objected to the court applying the enhancement. But at sentencing, the government needed to prove the facts supporting the enhancement only by a preponderance of the evidence. "A sentencing judge makes findings by a preponderance of the evidence, whereas a jury applies the higher beyond-a-reasonable-doubt standard." McClinton v. United States, 600 U.S. ___, 143 S. Ct. 2400, 2401 (Mem) (June 30, 2023). Having sat through a trial, the court already had evidence of the petitioner's role. At sentencing, the petitioner himself testified, arguing that his role in the offense was no different than that of the other defendants; his attorney added argument in the same vein. Case No. 17-cr-113, Dkt. No. 891 at 1-2. At the end of the sentencing hearing, the

26

court found beyond a reasonable doubt that the petitioner was a leader or organizer, though it acknowledged he may not have been the main or only leader or organizer. Id. at 2.

The petitioner's ineffective assistance of counsel claims are not supported by the record evidence and do not prove a constitutional deficiency. He is not entitled to relief on that ground.

B. Sentencing Guidelines

The Seventh Circuit long has held that guidelines errors are not the kinds of "miscarriages of justice" that warrant §2255 relief if they do not result in illegal sentences—sentences that exceed the statutory maximum. See, e.g., Hawkins v. United States, 724 F.3d 915, 916-17 (7th Cir. 2013) (a claim that the sentencing judge miscalculated the advisory guideline range and might have given a lower sentence if he hadn't is not a claim of constitutional error justifying collateral relief); Scott v. United States, 997 F.2d 340, 342 (7th Cir. 1993). That is because the guidelines are advisory; "the sentencing judge, being forbidden to presume the reasonableness of a guideline sentence, must make an independent determination of whether a guideline sentence would comport with the sentencing standard set for in 18 U.S.C. § 3553(a)." Hawkins, 706 F.3d at 823.

The petitioner argues that if the court had not applied the sentencing enhancement, it would have imposed a lower sentence. That kind of "could have, might have" argument does not rise to the level of a violation of the Constitution or of federal law, or prove that the petitioner received a sentence

27

in excess of the statutory maximum (in this case, life)—the bases for relief under §2255(a). Given the advisory nature of the Guidelines and that his sentence did not exceed the statutory maximum, the petitioner cannot demonstrate a miscarriage of justice based on his claim of a miscalculation of his advisory Sentencing Guidelines that would make his claim cognizable in a §2255 motion.

Even if the petitioner's claim were cognizable in a §2255 motion, the court would have rejected it. As the court has explained, it sat through the trial. It heard the petitioner's testimony at sentencing regarding why he did not believe the enhancement applied to him. The court did not find the petitioner's testimony persuasive and did find, based on the evidence at trial, that the government had proven beyond a reasonable doubt that the petitioner was a leader or organizer under the definition articulated in the guideline.

The petitioner has not demonstrated that he is entitled to *habeas* relief. The court will deny his motion and dismiss the case.

## III. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A court may issue a certificate only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petitioner should have been resolved in a different manner or that the

28

issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 673, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability because reasonable jurists could not debate that the petitioner is not entitled to *habeas* relief under 28 U.S.C. §2255.

## IV. Conclusion

The court orders that the petitioner's motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255 is **DENIED**. Dkt. No. 1.

The court **DECLINES TO ISSUE** a certificate of appealability.

The court orders that the case is **DISMISSED**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 27th day of December, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

29