UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LUIS F. GOMEZ,

        Petitioner,

v.

        Case No. 23-cv-339-pp

UNITED STATES OF AMERICA,

        Respondent.

---

**ORDER DENYING PETITIONER'S MOTION FOR RECONSIDERATION (DKT. NO. 17)**

---

On December 27, 2024, the court denied the petitioner's motion under 28 U.S.C. §2255 to vacate, set aside or correct sentence and declined to issue a certificate of appealability. Dkt. No. 15. The court entered judgment the same day. Dkt. No. 16. On January 21, 2025, the court received from the petitioner a motion for reconsideration of the court's order denying his §2255 motion. Dkt. No. 17. The court will deny the motion for reconsideration.

**I.    Factual and Procedural Background**

On March 14, 2023, the petitioner, representing himself, filed a motion to vacate, set aside or correct sentence under 28 U.S.C. §2255. Dkt. No. 1. The motion challenged the sentence this court imposed in <u>United States v. Gomez</u>, Case No. 17-cr-113 (E.D. Wis.), on the grounds that he had received ineffective assistance of counsel and that the court had applied an improper sentencing enhancement.

1

On July 18, 2023, the court issued an order screening the petitioner's motion, allowing the petitioner to proceed on his claims, ordering the respondent to answer or otherwise respond and setting a briefing schedule. Dkt. No. 2. On April 4, 2024, the respondent filed a response, arguing that the petitioner's counsel's performance was not ineffective and that the petitioner's challenges to the U.S. Sentencing Guidelines were not cognizable under §2255. Dkt. No. 4.

On April 5, 2024—the day after the court received the respondent's answer—the court issued an order reminding the petitioner that under the briefing schedule the court had set, the petitioner had forty-five days (until May 20, 2025) to file a brief in support of his petition. Dkt. No. 6.

On April 22, 2024—seventeen days after the respondent had filed its answer—the court received from the petitioner a "Motion for a Court Order to Provide Movant with a Copy of Government Response." Dkt. No. 7. Although the respondent had filed a certification attesting that it had mailed its answer to the petitioner at FCI La Tuna (where the petitioner is incarcerated), dkt. no. 5, the petitioner stated that he had not received the respondent's April 4, 2024 answer, dkt. no. 7 at 1. The petitioner advised the court that he objected to whatever the respondent had written in the brief the petitioner said he said he had not received. Id. at 2. He said that he would have argued that his attorney never told him that he'd been offered a plea agreement, that he was deprived of due process and that he would have accepted the plea if he'd known about it.

Id. He asked for an evidentiary hearing and asked the court to appoint him counsel. Id.

Along with this motion, the court received from the petitioner a second copy of his §2255 petition. Dkt. No. 8. There were a few differences. On the first page, the petitioner had written the civil case number for this case—2:23-cv-00399-pp—under the case number for his criminal case. Id. at 1. He'd also amended the title of the petition (which had read "Motion to Vacate, Set Aside, or Correct Conviction and Sentence Pursuant to 28 U.S.C. § 2255") to "Brief In Support Pursuant to 28 U.S.C. § 2255." Id. The last page of the original petition had been dated March 8, 2023, dkt. no. 1 at 9, while the last page of the version the court received on April 22, 2024 was dated April 12, 2024, dkt. no. 8 at 9.

On April 23, 2024, the clerk's office put a note on the docket, stating that it had mailed to the petitioner a copy of the respondent's answer. Dkt. No. 7 (notation). On April 24, 2024, the court issued an order advising the petitioner that if he wanted to file a new brief in support of his motion—one that addressed the arguments in the respondent's answer—he needed to do so in time for the court to receive that brief by June 14, 2024. Dkt. No. 9. The court advised the petitioner that if it did not receive a new brief by June 14, 2024, it would rely on the document it had received from the petitioner on April 22, 2024 (basically, his petition). Id.

The court did not receive a brief from the petitioner by June 14, 2024, so the court ordered the respondent to file a reply by July 29, 2024. Dkt. No. 10.

3

The respondent filed its opposition brief on October 25, 2024. Dkt. No. 11. On October 31, 2024, the court issued an order giving the petitioner one, final chance to address the respondent's arguments; the court ordered that if the petitioner wanted to file a reply brief, he must do so "in time for the court to *receive* it by the end of the day on **December 6, 2024**." Dkt. No. 13 at 2 (emphasis in original). The court warned the petitioner that "[i]f the court [did] not receive a reply brief from the petitioner by day's end on December 6, 2024, the court [would] rule on the petition without further input from the petitioner." Id.

On December 9, 2024, the court received from the petitioner a reply brief. Dkt. No. 14. But that reply brief arrived three days *after* the December 6, 2024 deadline the court had set—even though the court had told the petitioner in its October 31, 2024 order that he must file his reply in time for the court to *receive it* by December 6, 2024. On December 27, 2024, the court issued an order observing that the petitioner did not timely file the reply brief. Dkt. No. 15. It declined to consider the reply brief, analyzed the claims the petitioner had raised in his motion and other briefs, denied the §2255 motion and dismissed the case Id.

On January 21, 2025, the court received from the petitioner a motion for reconsideration under Federal Rule of Civil Procedure 59(e), asserting that "the court erred in not accepting [the petitioner's] timely filed reply brief and that the court should have considered his reply brief in its decision." Dkt. No. 17 at 2. The petitioner also attached to the reply brief a letter from the lawyer who

represented him in his criminal trial, explaining discussions that lawyer had had with the government in an attempt to resolve sentencing disputes, and a letter from his first appellate lawyer, recounting the issues the petitioner wanted that lawyer to look into. Dkt. No. 17-1.

## II. The Court's Order Dismissing the Petition (Dkt. No. 15)

As stated above, the court declined to consider the petitioner's reply brief in deciding his motion because he did not comply with the court's October 31, 2024 order; he did not send the reply brief in time for the court to *receive* it by December 6, 2024. Dkt. No. 15 at 5. But in a footnote, the court explained that "[e]ven if the court were to consider the reply, [the reply] restates the petitioner's arguments from his opening brief and does not respond to the arguments made by the government in its opposition brief." Id. at 6 n.1.

Regarding the petitioner's argument that his trial counsel's advice had led him to reject a plea offer, the court first found that the petitioner's claims were contradicted by the facts and the record. Id. at 11. The court recounted defense counsel's court appearances and the documents he'd filed. Id. at 11-15. It recounted counsel's representation of the petitioner at trial and discussed the letter the court had received from the petitioner on February 3, 2020 in which the petitioner admitted that his counsel had presented him with a plea offer and asserted that his lawyer had advised him to accept the offer. Id. at 15-16. Next, the court pointed out that the plea offer the government had made to the petitioner did not agree that the government would recommend the mandatory minimum sentence of ten years, as the petitioner now argues. Id. at

5

18. Rather, it promised that the government would recommend a sentence within the applicable guideline range as calculated by the court. Id. at 19. And the court recounted that the agreement had made clear the court was not bound by the agreement. Id. at 19-20. Next, the court pointed out that the guideline range reflected in the presentence investigation report was the identical guideline range that the petitioner had told the court in his January 2020 letter that his lawyer had "threatened" him with. Id. at 21. And the court explained that even if the petitioner's lawyer's guidelines prediction had been inaccurate (which it does not appear to have been), inaccurate guideline predictions are not evidence of ineffective assistance of counsel. Id. at 22-23. The court found the petitioner's assertion that his attorney was not familiar with the sentencing guidelines was not supported by the record or by counsel's history as a federal criminal defense attorney. Id. at 23. Finally, the court found that the petitioner had not established that he was prejudiced by his counsel's alleged ineffective assistance. Id. at 23-24.

The petitioner asserted several other bases for claiming ineffective assistance of counsel, but the court found those bases undeveloped. Id. at 24-27. The court also rejected the petitioner's assertion that the court misapplied the sentencing guidelines, finding that the guidelines are advisory and that miscalculation of the guidelines is not cognizable in a §2255 motion. Id. at 27-28. Finally, the court declined to issue a certificate of appealability, finding that reasonable jurists could not debate that he was not entitled to relief under §2255. Id. at 28-29.

### III. The Petitioner's Motion for Reconsideration (Dkt. No. 17)

The petitioner asserts two grounds in his motion for reconsideration: (1) that his reply brief was timely filed, that the court erred in finding otherwise and that the court erred in failing to consider the reply brief; and (2) that he had submitted with his motion "new evidence" in support of his assertion that his attorney "failed him when [the attorney] encouraged [the petitioner] to go to trial as opposed to accepting the government's offer, or presenting a counter offer." Id. at 2, 5.

Regarding the timeliness of his reply brief, the petitioner asserts that "Rule 6(e), Fed. R. Civ. P. holds that when a pleading is served by mail, the court, is to add 3 days to the prescribed period." Id. at 2-3. He maintains that under that rule, his reply brief was timely filed and that the court erred in declining to consider it. Id. at 3. The petitioner also says that he put the reply brief in his institution's mailbox on December 5. Id. Citing the "prison mailbox rule," Houston v. Lock, 487 U.S. 266 (1988) and Burns v. Morton, 134 F.3d 109, 100 (3d Cir. 1998), the petitioner contends that "for the purposes of computing a legal deadline, a prisoner's court filing is considered filed when it is deposited in the prison's internal mail system." Id. at 3-4. He says that he "initiated his proceedings properly by tendering to prison officials for mailing his reply brief pursuant to the mailbox rule." Id. at 4. He asserts that "[t]he timeliness of the notice of appeal[1] for purpose of the limitations period was not dependent on actions occurring after [the petitioner] initiated the process by

---

[1] The filing at issue was not a notice of appeal. It was a reply brief.

7

delivering to the prison mailbox and was therefore timely filed and should have been considered by the court." Id. at 4-5.

The penultimate page of the petitioner's motion is titled "Exhibit A Affidavit." Id. It contains a handwritten paragraph in which the plaintiff says that he placed his reply brief in the mail at FCI La Tuna on December 5, 2024. Id. at 6. This page purports to be signed by the petitioner, dated December 20, 2024 and submitted "under perjury rules." Id.

As for his second argument, the petitioner says that he is submitting an exhibit as "new" or "additional evidence," showing "that his attorney failed him when he encouraged him to go to trial as opposed to accepting the government's offer, or presenting a counteroffer." Id. at 5.

The petitioner concludes by asking the court to grant him a hearing "or [certificate of appealability] and counsel to proceed in this case." Id.

**IV.  Discussion**

  A.  Legal Standard

Federal Rule of Civil Procedure 59(e) allows the court to alter or amend a judgment if the party files the motion "no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e).

> Relief under Rule 59(e) is generally reserved for "extraordinary cases," *Runnion* [*ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*], 786 F.3d [510] at 521 [(7th Cir. 2015)], and for a motion to be successful, the movant must clearly establish: "(1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life* [*Ins. v. Beyrer*], 722 F.3d [939] at 954 [(7th Cir. 2013)].

Reilly v. Will Cnty. Sheriff's Office, 142 F.4th 924, 929 (7th Cir. 2025). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000) (quoting Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). "Newly discovered evidence" is evidence that was discovered after the trial or decision, that the party relying on the evidence had exercised due diligence to discover it, that "the evidence is not merely cumulative or impeaching," that it is material and that it is the type of evidence that likely would result in a different result if presented at a new trial. Beyrer, 722 F.3d at 955 (quoting Envtl. Barrier Co., LLC v. Slurry Sys., Inc., 540 F.3d 598, 608 (7th Cir. 2008)).

"Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." Ahmed v. Ashcroft, 388 F.3d 247, 249 (7th Cir. 2004) (quoting Caisse Nationale de Credit Agricole v. CBI Indus., Inc., 90 F.3d 1264, 1270 (7th Cir. 1986)). "A Rule 59(e) motion 'does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment.'" United States v. Resnick, 594 F.3d 562, 568 (7th Cir. 2010) (quoting Bordelon v. Chi. Sch. Reform Bd. of Trustees, 233 F.3d 524, 529 (7th Cir. 2000)).

B. <u>Analysis</u>

The court received the petitioner's motion to reconsider twenty-six days after the court entered its final judgment. That means that the motion was timely filed under Rule 59(e). But to obtain relief under Rule 59(e), the petitioner must demonstrate that in dismissing his motion, the court either committed a manifest error of law or fact or that newly discovered evidence would have caused the court to come to a different result.

The petitioner first argues the court made a legal mistake when it found that his reply brief was untimely and declined to consider it. He cites Fed. R. Civ. P. 6(e) and the prison mailbox rule.

Rule 6 is the Federal Rule of Civil Procedure that explains how to compute and extend time in federal motion practice. There no longer is a subsection (e) to Rule 6. There *is* a subsection (d) (the current version of former subsection (e)), titled "Additional Time After Certain Kinds of Service." That rule states that when a party "may or must act within a specified time after being served and service is made" by mail, "3 days are added after the period would otherwise expire under Rule 6(a)." Fed. R. Civ. P. 6(d). By its terms, Rule 6(d) does not apply in the petitioner's situation. The petitioner was not required to "act within a specified time after being served." *Service* did not dictate the deadline for him to file a reply brief; *this court's October 31, 2024 order* set the deadline. "Federal Rule of Civil Procedure 6(d) affords a party three extra days after a time period would otherwise expire '[w]hen a party may or must act within a specified time after being served and service is made by . . . mail.'

10

However, this rule 'applies only to documents "served" on opposing counsel, not documents such as complaints or notices of appeal that must be filed in court.'" Stevenson v. Elite Staffing, Inc., Case No. 21-CV-1072, 2022 WL 17811587, at *2 (E.D. Wis. Dec. 19, 2022) (quoting Johnson v. McBride, 381 F.3d 587, 589 (7th Cir. 2004)).

The deadline the court set—December 6, 2024—was an extension of the June 14, 2024 deadline the court had set in its April 24, 2024 order. Rule 6(b)(1) gives courts the authority to extend deadlines. And the Seventh Circuit has held that it also gives courts the authority to enforce those deadlines. Raymond v. Ameritch Corp., 442 F.3d 600, 605 (7th Cir. 2006) (citing Reales v. Consol. Rail Corp., 84 F.3d 993, 996 (7th Cir. 1996)). This court's October 31, 2024 order required the petitioner to file his brief *in time for the court to receive it* by December 6, 2024. The petitioner did not follow that order. By his own admission, he put the reply brief in the institution mailbox on December 5, 2024—only a day before the December 6, 2024 receipt deadline ordered by the court. Even had institution staff put the reply brief in the U.S. Mail that same day, there is no way it could have made it from FCI La Tuna (which is in New Mexico) to Wisconsin in a single day. The petitioner is not entitled to relief under his Rule 6(d) argument.

The petitioner also argues that the court erred in declining to consider his reply brief because of the "prison mailbox rule." He says that the Supreme Court "established a 'mail-box rule' for . . . a pro se litigant 'unskilled in law, unaided by counsel, and unable to leave prison, a pro se prisoner's control over

11

the process of his notice necessarily ceases as soon as he hands it over[.]'" Dkt. No. 17 at 3 (quoting Houston v. Lack, 487 U.S. 266, 271 (1988)). He asserts "that a prisoner's notice of appeal is deemed filed at the moment the prisoner places it in the prison mail system, rather than when it reaches the court clerk." Id. at 4 (quoting Hurlow v. United States, 726 F.3d 958, 962 (7th Cir. 2013)).

Like Rule 6(d), the "prison mailbox rule" does not entitle the petitioner to relief. "The prison mailbox rule, established by the Supreme Court in *Houston v. Lack*, 487 U.S. 266, 275-76 . . . (1988), and codified in Rule 4(c) of the Federal Rules of Appellate Procedure, provides that a prisoner's notice of appeal is deemed filed at the moment the prisoner places it in the prison mail system, rather than when it reaches the court clerk." Hurlow v. United States, 726 F.3d 958, 962 (7th Cir. 2013). "Although the prison mailbox rule was first applied to notices of appeal, *see Houston*, 487 U.S. at 276 . . . , the rule applies to all district-court filings save for 'exceptional situation[s],' *Edwards v. United States*, 255 F.3d 756, 758 (7th Cir. 2001) (per curiam)." Taylor v. Brown, 787 F.3d 851, 858-59 (7th Cir. 2015). "A prisoner may invoke the rule by filing a notarized statement or sworn declaration providing the date on which the prisoner placed the filing in the prison's internal mail system and stating that first-class postage was prepaid." Johnson v. Piontek, 799 F. App'x 418 (Mem), 418-19 (7th Cir. 2020).

The mailbox rule does not help the petitioner for two reasons. First, he has not properly invoked the rule. The "affidavit" the petitioner included with

12

his motion to reconsider (Dkt. No. 17 at 6) is not notarized. It does not cite 28 U.S.C. §1746, the statute that governs unsworn declarations under penalty of perjury. Although it mentions "perjury rules," the petitioner does not attest that he is making the statements in the affidavit "under penalty of perjury." And the affidavit does not provide any information about whether the petitioner applied first-class postage when he placed the reply brief in FCI La Tuna's mail system, or explain how he "placed" it in the mail system.

Second, even taking the petitioner's word for it—as the court does—that he put the reply brief in FCI La Tuna's mail system on December 5, 2024, the petitioner's actions did not comply with this court's October 31, 2024 order. The court ordered that if the petitioner wanted to file a brief, he had to "file the reply brief in time for the court to *receive* it by the end of the day on **December 6, 2024**." Dkt. No. 13 at 2 (emphasis in original). Even if the petitioner *filed* his reply brief on December 5, 2024—the date he says he placed it in FCI La Tuna's mail system—he did not file it in time for the court to *receive* it by December 6, because again, there is no way that a document placed in the U.S. Mail from New Mexico on December 5 could have made it to Wisconsin by day's end on December 6. Even if the court deems the reply brief "filed" on December 5, 2024 under the prison mailbox rule, the petitioner *still* did not comply with the court's October 31, 2024 order.

As the court has explained, to demonstrate a "manifest error" of law, the petitioner must show that the court wholly disregarded, misapplied or failed to recognize controlling precedent. Oto, 224 F.3d at 606 (7th Cir. 2000). The

13

petitioner has not demonstrated that the court disregarded, misapplied or failed to recognize any rules, statutes or precedent. And if the court erred in declining to consider the petitioner's reply brief, that error was harmless because the petitioner cannot demonstrate that he was harmed or prejudiced. The court explained in its dismissal order that "[e]ven if the court were to consider the reply, it merely restates the petitioner's arguments from his opening brief and does not respond to the arguments made by the government in its opposition brief." Dkt. No. 15 at 6 n.1. The substance of the petitioner's reply brief was approximately two pages; in it, the petitioner reiterated that his lawyer had not informed the petitioner that he was likely to lose at trial or that he could face more than the mandatory minimum ten-year sentence if he lost at trial. Dkt. No. 14 at 1-2. He asserted that if he'd understood those things, he would have accepted the "Government's plea offer of 10 years . . . ." Id. at 2. He asserted that he could prove that his counsel's performance was deficient because his lawyer was unfamiliar with the sentencing guidelines. Id. at 3. The petitioner made all these arguments in his motion. Dkt. Nos. 1, 8.

The petitioner has not demonstrated a manifest error of law or fact, so he is not entitled to prevail on his Rule 59(e) motion on either of those bases. That leaves his "newly discovered evidence" argument. As the court explained above, "newly discovered evidence" is evidence that was discovered after the trial or decision, that the party relying on the evidence had exercised due diligence to discover it, that "the evidence is not merely cumulative or impeaching," that it is material and that it is the type of evidence that likely would result in a

14

different result if presented at a new trial. Beyrer, 722 F.3d at 955 (quoting Slurry Sys., Inc., 540 F.3d at 608). "[M]otions under Rule 59(e) cannot be used to present evidence that could have been presented before judgment was entered." Obriecht v. Raemisch, 517 F.3d 489, 494 (7th Cir. 2008) (citation omitted).

The "newly discovered evidence" the petitioner attached to his motion to reconsider consists of two letters. The first is a letter dated July 23, 2020 from the petitioner's trial attorney to the petitioner. Dkt. No. 17-1 at 1. The attorney explains that the government had made an offer to "resolve" the petitioner's "sentencing issues." Id. It says that the lawyer had conveyed this offer to the petitioner when last they'd spoken, but that the lawyer thought it important to put the offer in writing. Id. The lawyer then discusses the sentencing guidelines calculations in the presentence report—a base offense level of 34 (based on the amount of cocaine—50-150 kilograms) and a 4-level increase for being a leader or organizer. Id. The lawyer says that he knows the petitioner disputed those calculations, then provides the petitioner with the sentencing range that would result if the court were to apply the 4-level increase versus the sentencing range that would result if the court did not apply the increase. Id. The lawyer then conveyed the following information:

> If you agree to forego your appeal, the Government would agree to a joint recommendation of 151 months. I probably can get the government to agree that only the Government would recommend 151 months, and we would be free to recommend any sentence that meets with the statutory minimum. As you are further aware, that based on the jury's verdict, the Court must sentence you to at least 120 months. We would be able to recommend that number, and it

15

> would be my intention to do so. This offer, however, will not apply if we have a hearing regarding the weight of the cocaine.

Id. The lawyer concludes by advising the petitioner that he'll see the petitioner on Wednesday, and he followed the English version of the letter with a Spanish version (id. at 2).

The second letter is dated November 12, 2020. Id. at 3.[2] It is from the attorney who first represented the petitioner on appeal. The appellate lawyer asks the petitioner to send him a letter listing all the petitioner's issues, then recounts the issues that he understands the petitioner wants him to raise on appeal. Id. The lawyer lists eight issues, including the weight of the drugs, how the government calculated the weight, the allegation of obstruction and the application of the enhancement for being a leader or organizer. Id.

For starters, these letters do not constitute "newly discovered" evidence. The letter from trial counsel is dated July 23, 2020—over eight months after the jury's November 12, 2019 verdict and almost six months *before* the petitioner's January 19, 2021 sentencing hearing. See United States v. Gomez, 17-cr-113 at Dkt. Nos. 629 (verdict) and 891 (sentencing hearing minutes). The petitioner has had this letter for over *five years* and had had it for almost two and a half years on the date he filed his §2255 motion (March 14, 2023). The letter from the appellate lawyer is dated November 12, 2020—a year after the jury verdict and two months before the petitioner's sentencing hearing (it appears that the petitioner was looking for other counsel to represent him at

---

[2] The petitioner also attached this second later to his late-filed reply brief. Dkt. No. 14-1.

sentencing). Again, the petitioner has had that letter for almost five years and had had it for almost two and a half years at the time he filed his §2255 petition.

That means that the petitioner cannot demonstrate that he discovered these letters *after* this court's December 27, 2024 order dismissing his case. Nor has he demonstrated that he exercised due diligence in looking for the evidence. In fact, he has not explained why he did not produce these two letters before the court issued its order of dismissal. But the biggest problem with this "newly discovered evidence" is that it is not material and does not convince this court that its ruling dismissing the petition was erroneous.

In his §2255 petition, the petitioner asserted that his trial counsel misled him into going to trial by failing to advise him to accept a pre-trial plea offer. The court discussed in its December 2024 dismissal order why that argument had no merit. The two letters the petitioner has provided the court with his motion to reconsider *do not* show that the petitioner's trial counsel failed to tell him about a plea offer, or that counsel talked the petitioner into going to trial rather than taking that offer. The two letters the petitioner has provided have nothing to do with a *plea* offer, or with whether to go to trial. The trial was *over* by the time defense counsel wrote the July 23, 2020 letter—it had been over for months. Defense counsel's July 23, 2020 letter recounts that counsel had spoken to the prosecutor about the petitioner's disagreement with the guidelines calculations in the presentence report, and that the two lawyers had reached an agreement regarding the *sentencing hearing*: if the petitioner agreed

17

that at the sentencing hearing, he would not contest the amount of drugs used to calculate the base offense level of 34 and would agree to forego his appeal, the government would agree to a joint recommendation of a sentence of 151 months. And the letter from the second lawyer is nothing more than a list of the petitioner's disagreements with the presentence investigation report's guidelines calculations and a request for the petitioner to more clearly and specifically list those disagreements.

Even if these letters met the definition of "newly discovered evidence" under Rule 59(e), they are not material to the question the petitioner raised in his §2255 petition: whether his trial lawyer misled him into foregoing a pre-trial plea agreement and going to trial. The letters show only that *after* the trial, the petitioner's lawyer tried to negotiate with the government to convince the government to make a lower sentencing recommendation.

The petitioner has not demonstrated that the court committed a manifest error of law or provided the court with newly discovered, material evidence that warrants altering or amending the judgment. The court will deny the petitioner's motion for reconsideration under Rule 59(e).

**V.    Conclusion**

The court **DENIES** the petitioner's motion to reconsider. Dkt. No. 17.

Dated in Milwaukee, Wisconsin this 15th day of October, 2025.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**